**WILLIS et al. v. NECHES CANAL CO. et al.**
(No. 1231—5257.)

Commission of Appeals of Texas, Section A.
April 24, 1929.

Charles S. Pipkin, A. D. Moore, and Oliver J. Todd, all of Beaumont, for plaintiffs in error.

George Chilton, of Beaumont, for defendant in error Neches Canal Co.

C. A. Lord, of Beaumont, for defendants in error Nolte Irr. Co. and others.

CRITZ, J. This suit was originally filed by B. H. Willis, the owner of a tract of about 1,189 acres of rice land, and his tenants, who farmed such land in rice during the year 1925, against the Neches Canal Company, a private corporation, Nolte Irrigation Company, also a private corporation, and E. S. Nolte, individually, for damages on account of failing to supply plaintiffs with enough water for their rice crops during the year 1925. Trial in the district court of Jefferson county, at Beaumont, by jury, resulted in a verdict and judgment for defendants. B. H. Willis and his tenants appealed from this judgment to the Court of Civil Appeals for the Ninth District, at Beaumont, which court affirmed the judgment of the district court. 7 S.W.(2d) 184. The case is now before this court on writ of error, granted on application of B. H. Willis et al. The case requires a rather extended statement of the issues, and, as the Court of Civil Appeals has made a very full and fair statement of such issues, for the sake of brevity, we refer to their opinion. We make such further statement as may be necessary to properly discuss the one issue which we think controls this appeal.

As shown by the record, and the opinion of the Court of Civil Appeals, in 1913 the Neches Canal Company filed its water appropriation, as required by the act of the Legislature of this state of that year. The part germane to this appeal is as follows:

"The number of acres irrigated and to be irrigated is as follows: During the irrigation season of this year 1913, the Neches Canal Company irrigated 33,450 acres of land being cultivated in rice. It is intended and believed and estimated that at least that number of acres will be irrigated in future years. It has been demonstrated that in rice culture the particular acreage irrigated must change and alternate from year to year, as it is not desirable to continuously farm the same land in rice, and for this reason the 'old land,' or fields, that is the land which has been farmed in rice from one to four years is 'laid out,' or abandoned for a time, while 'new land,' that is 'sod land,' or land which has rested from rice culture, is put in cultivation. Thus the number of acres varies and the particular acreage is alternated. When the pumping facilities of this company are increased so as to pump the full carrying capacity of its canal as hereinafter described, the quantity of land that will be irrigated will be, approximately, 40,000 acres."

In 1925 the Neches Canal Company contracted to irrigate 18,000 acres of land, all of which was adjoining or contiguous to its canal and laterals, or the canal and laterals of the Nolte Irrigation Company. For the purposes of this appeal the Neches Canal Company and Nolte Irrigation Company are treated as one irrigation company. The Willis land is supplied with water from the Nolte canal. In 1913, when the water appropria-

tion was filed, the two companies supplied water for about 33,000 acres of land. As shown, the appropriation involved about 40,000 acres, and this 40,000 acres included the Willis tract for that year.

In 1925 the Neches Canal Company contracted to irrigate 18,000 acres of land, all of which is found by the Court of Civil Appeals to be adjoining or contiguous to the canals and laterals of the Neches Company and the Nolte Company. About 8,000 acres of this 18,000 acres was irrigated in 1913 and prior years. We will designate it, as the Court of Civil Appeals did, as "old land." The other 10,000 acres, of the 18,000 acres contracted to be irrigated in 1925, was not a part of the land irrigated in 1913, and we also designate it, as did the Court of Civil Appeals, as "new land." The Willis 1,189-acre tract is a part of the old land.

It is shown that under ordinary conditions the irrigation companies would have had ample water to irrigate more than 30,000 acres of land, but that in 1925 the country affected, and the water shed supplying the canal company's source of supply of water suffered the most severe drought in the memory of men. As a result of this drouth the canal company was short of water, and only had enough to have supplied about 9,000 acres. The record shows that rice land is not planted in rice every year on the same land, but that the land planted one year is allowed to lie out the next. The canal company cannot compel any one to take water, and the owners of land take it only such years as they choose.

It is shown, and found by the Court of Civil Appeals, that the year 1925 was an extraordinarily dry year, and that all the Gulf Coast, including all the lands covered by the appropriation of the Neches Canal Company, suffered the most severe drought in the memory of the oldest inhabitant. It is further shown that as a result of such drouth the supply of water of the two canal companies became very limited, and was not sufficient for more than one-half the number of acres they had obligated themselves to supply. It is further shown that when this distressing condition arose the canal companies fairly, and in the exercise of good faith and due care, made a fair pro rata distribution of the available water on an acreage basis among all their customers, except as to some water diverted to the city of Port Arthur. The trial jury found on proper evidence that this water diverted to Port Arthur was too insignificant to be a contributing cause of the damages complained of, and we shall not consider that matter further.

While the record in this case is very voluminous and complicated, and many assignments of error are presented to this court, it is our opinion that there is but one vital issue involved in this appeal, and we shall discuss that issue only. The Supreme Court, in grant-

ing this writ, did so on the following grounds, as shown by their order: "While we are inclined to the view that the opinion of the Court of Civil Appeals is correct, we prefer to hear the case, in view of its great importance, and for effect of the decision."

It is the contention of Willis, the landowner, and his tenants, who were farming said Willis land during 1925, that they and the other owners of the 8,000 acres of old land that were supplied with water by the canal companies for the year 1913 and prior years had a prior right to water during 1925, over the owners of the new land, who became customers of said two canal companies since 1913, and said Willis and his tenants base this contention on the provisions of what is now article 7472, R. C. S. of Texas 1925. Said article reads as follows:

"As between appropriators, the first in time is the first in right."

In order to properly decide this case, we must correctly construe articles 7555, 7557, and 7559, R. C. S. of 1925, and apply same to the facts of this case so far as applicable. Also later we will consider article 7472, supra, and construe same so far as the issues of this case may require. Articles 7555, 7557, and 7559 read as follows:

"Art. 7555. All persons who own or hold a possessory right or title to land adjoining or contiguous to any dam, reservoir, canal, ditch, flume or lateral, constructed and maintained under the provisions of this chapter, and who shall have secured a right to the use of water in said canal, ditch, flume, lateral, reservoir, dam or lake, shall be entitled to be supplied from such canal, ditch, flume, lateral, dam, reservoir or lake with water for irrigation of such land, and for mining, milling, manufacturing, development of power, and stockraising, in accordance with the terms of his or their contract."

"Art. 7557. In case of shortage of water, from drought, accident or other cause, all waters to be distributed shall be divided among all customers pro rata, according to the amount he or they may be entitled to, to the end that all shall suffer alike, and preference be given none."

"Art. 7559. The permanent water right shall be an easement to the land and pass with the title thereto; the owner thereof shall be entitled to the use of the water upon the terms provided in his or their contract, with such person, association of persons or corporation, or, in case no contract is entered into, then at just and reasonable prices and without discrimination. Any instrument of writing conveying a permanent water right shall be admitted to record in the same manner as other instruments relating to the conveyance of land."

It is plainly evident to us that the issues of this case are governed and ruled by the three articles last above quoted, and that the provisions of article 7472 have no application whatever.

It is found by the Court of Civil Appeals, and in effect also found by the trial court, which findings are supported by the record, that all the land contracted to be irrigated by the canal companies for the year 1925, other than the 2,000 acres which did not materially contribute to the loss, adjoined or was contiguous to the canals and laterals of the two irrigation companies. It follows as a matter of law that, under the express provisions of article 7555, supra, the entire 18,000 acres was entitled to be supplied with water. Edinburg Irrigation Co. v. Ledbetter (Tex. Com. App.) 286 S. W. 185.

Under the express provisions of article 7559, supra, the permanent water rights provided under article 7555 are an easement to the land, and such water right passes with the title thereto. It is expressly provided under article 7557 that, "in case of shortage of water from drought, * * * all waters to be distributed shall be divided among all customers pro rata, * * * to the end that all shall suffer alike, and preference be given none." The record shows, and the Court of Civil Appeals finds, that during the year 1925, the canal companies were faced with the most extraordinary and distressing drought that the oldest inhabitant of that country had ever known, and that as a consequence there was a shortage of water. It is further shown that in meeting these conditions the canal companies fairly and in good faith lived up to the requirements of article 7557, supra, and distributed the available water pro rata among their customers. In doing this they lived up to the requirements of our laws, and are not liable in damages when they have been guilty of no wrong.

We here deem it expedient to refer to article 7472, supra, relied on by Willis et al. as a basis for their contention that they were entitled to prior rights. It will be noted that this article provides that, "as between appropriators, the first in time is the first in right." Willis et al. contend that the lands that took water from the canal companies for the year 1913, and prior years, are prior appropriators, and therefore entitled to prior rights over customers of said canal companies who have become such since the year 1913. This contention is untenable. The very next article of the statute, article 7473, clearly defines the appropriator of water referred to in article 7472. Said article 7473 is as follows:

"Art. 7473. For the purpose of this chapter, an appropriator is any person, association of persons, corporation or irrigation district, who has heretofore made beneficial use of any water, in a lawful manner, under the provisions of any act of the Legislature of the state of Texas, prior to the passage of chapter 171 of the General Laws of the Thir-

ty-Third Legislature of Texas, and who has filed with the state board of water engineers a record of his appropriation, as required by said act of the Thirty-Third Legislature of Texas, or who has heretofore or may hereafter make beneficial use of any water within the limitations of a permit lawfully issued by the board of water engineers, and no appropriation of any water shall be considered as having been perfected, unless such water has been beneficially used for one or more of the purposes named in this chapter, and for the purpose or purposes stated in the original declaration of intention to appropriate such water or stated in the permit issued by the board of water engineers."

From the plain provisions of article 7473, Willis and his tenants are not *appropriators* of water within the meaning of articles 7472 and 7473, supra. The canal company is the *appropriator*, and Willis and his tenants are *customers* of an *appropriator*, within the plain-meaning of article 7557. There is absolutely no evidence in the record that would constitute Willis or his tenants *appropriators*, as defined by article 7473, but, on the other hand, the evidence clearly and absolutely negatives such a conclusion.

We think that the Court of Civil Appeals has correctly decided this case, and we therefore recommend that the judgment of that court be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.